UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CARL HORTON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:10-cv-1452-RLY-DML |
| | ) | |
| AIR SYSTEMS COMPONENTS LP, | ) | |
|     Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On November 12, 2010, Carl Horton ("Plaintiff") filed a Complaint against Air Systems Components LP ("ASC"), alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. ASC now moves for summary judgment. For the reasons set forth below, ASC's motion is **GRANTED**.

**I.    Factual Background**

    **A.    ASC**

ASC is involved in the manufacture of air handling equipment at its facility in Lebanon, Indiana. (Declaration of Jeffrey Deaton ("Deaton Dec.") ¶ 2). ASC's manufacturing employees at the Lebanon facility are represented by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied & Industrial Service Workers International, Local No. 1999 ("Union"). (*Id*. ¶ 4). ASC maintains a collective bargaining agreement ("CBA") with the Union. (*Id*. ¶ 5).

ASC also maintains policies and procedures on a wide variety of topics, including its Equal Employment Opportunity Policy and its Sexual Harassment Policy.  (*Id.* ¶ 6).  Plaintiff acknowledged receiving and reviewing these policies at the time he was hired, and testified that he was aware of ASC's reporting procedures for harassment.  (Deposition of Carl Horton ("Plaintiff Dep.") at 28-29).

### B.     Plaintiff's Union Membership

Plaintiff began working for ASC on January 7, 2008, and is a member of the Union  (Plaintiff Dep. at 19).  The Union is the exclusive bargaining agent with respect to rate of pay and hours of work at ASC.  (*Id.* at 21).  As such, the terms and conditions of Plaintiff's employment, including Plaintiff's wages, are governed by a collective bargaining agreement ("CBA") negotiated by ASC and the Union.  (Deaton Dec. ¶ 5).  Pursuant to the CBA, wages are based upon the position that an individual holds within the Company.  (Plaintiff Dep. at 23).

### C.     Complaints about Dale Funk

The relevant facts of this case begin with Plaintiff's transfer into the Assembly Department as an Assembler B on March 16, 2009.  (*Id.* at 40).

Plaintiff testified that during the first fifteen days of being transferred into that department, his co-worker, Dale Funk ("Funk"), made inappropriate sex-based comments to him approximately thirty times.  (*Id.* at 52).  Specifically, Funk "talked a lot about sex with little boys," and accused Plaintiff of doing the same.  (*Id.* at 51-52).  Funk also "rubbed up against" Plaintiff as Plaintiff was bent over his work bench.  (*Id.* at 58-59;

221-222). Plaintiff did not initially complain about Funk's behavior, fearing that if he did, he would lose his job. (*Id.* at 52).

Following Plaintiff's probationary period, Funk's inappropriate sex-based comments continued. (*Id.* at 99, 224). For example, on more than one occasion in July 2009, Funk hung up a wooden sign over Plaintiff's workbench that said, "Got bait, going to Boone's Pond," which, according to Plaintiff, is a reference to a local nature area notorious for illicit and illegal sexual activity. (*Id*. at 99-101). Funk also insinuated to another male employee that Plaintiff wanted "to go out with [him]." (*Id*. at 223-24).

Plaintiff complained of Funk's inappropriate behavior to supervisors Tony Cleary ("Cleary") and Adam Doyle. (*Id.* at 54-56). Not satisfied with their response (or lack thereof), Plaintiff then lodged a complaint against Funk to ASC's Human Resources Manager, Kristin Thomas ("Thomas"). (*Id.* at 57). Thomas echoed the same sentiment as Cleary and Doyle, telling Plaintiff "that's just Dale being Dale." (*Id.* at 221).

### D. Plaintiff's Rotation

It was not uncommon for ASC employees to be assigned temporary assignments when work was slow. (*Id*. at 68-69). Plaintiff believed he was transferred into these temporary assignments more often than other employees, but he has no concrete evidence to support that fact. (*Id*. at 69).

In approximately August of 2009, ASC transferred Plaintiff out of the Assembly Department and put him on a two-week rotation between the Wash Department and Blades Department. (*Id.* at 60, 112; Plaintiff's Dep. Ex. 3). According to Plaintiff, the

3

Wash Department was known as "the pit" because the working conditions were poor – full of water, cold in the winter, and hot in the summer. (Plaintiff Dep. at 237). Plaintiff remained classified as an Assembler B, and maintained the same rate of pay. (*Id.* at 112).

Following this transfer, Plaintiff reported no further incidents of harassment. (*Id.* at 61, 133). In fact, Plaintiff testified that he believed Cleary talked to Funk about his complaints, because Funk "got real quiet. He didn't say much at all." (*Id*. at 61).

### E. Plaintiff's Charge of Discrimination

On September 21, 2009, Plaintiff filed his second charge of discrimination[1] with the Equal Employment Opportunity Commission ("EEOC"), alleging that ASC retaliated against him by removing him from the Assembly Department for complaining that he was "subjected to sexual comments" by Funk. (*Id*., Plaintiff Dep. Ex. 3).

### F. Transfer to General Laborer

On December 3, 2009, Plaintiff signed a formal written request that his Assembler B position be eliminated by submitting a document to Human Resources that stated:

> I, Carl Horton, would like to have my Assembler B position eliminated so that I may bump into another job classification. There is not enough work in my Assembler B position to keep me in the Assembly department.

(*Id.* at 104; Plaintiff Dep. Ex. 19). Although Plaintiff testified that he felt forced to sign it or be laid off, he acknowledged that when work was slow in the Assembly Department,

---

[1] Plaintiff filed his first charge of discrimination with the EEOC on July 30, 2009, alleging that he (then 60 years old), was being paid less than his younger co-workers. (Plaintiff Dep. Ex. 1).

he was sent home because he had less seniority than his co-worker in that department, Funk. (*Id*. at 106-08).

From January 2010 until early March 2010, Plaintiff remained classified as an Assembler. (*Id.* at 114). During this time frame, Plaintiff performed temporary work assignments for the Wash Department. (*Id*. at 113-14). His rate of pay, however, remained the same. (*Id*. at 113-15, 187-88).

On March 2, 2010, Plaintiff was permanently transferred to the Wash Department, where he was classified as a General Laborer. (*Id.* at 117, 120). Following this transfer, Plaintiff's pay-rate was decreased to $13.48 per hour. (*Id.* at 121). Plaintiff's pay decrease was tied to the change of his position as set forth in the CBA. (*Id*. at 121-23).

### G. Third EEOC Charge and Instant Lawsuit

On March 9, 2010, Plaintiff filed a third charge of discrimination with the EEOC. (Plaintiff Dep. Ex. 21). The third charge identifies September 2009 as the earliest date of discrimination, and alleges that ASC violated Title VII by discriminating against him on the basis of his gender and by retaliating against him by, *inter alia*, transferring him to positions where the working conditions were poor. (*Id*.).

### H. Transfer to the Test Department

In May 2011, Plaintiff bid for and received a position within the Test Department. (*Id.* at 149, 153, 156). At the time of his bid, the rate of pay for the position in the Test Department was $16.54 per hour. (*Id. *at 153). Consequently, when Plaintiff transferred to the Test Department, his pay increased to $16.54 per hour. (*Id*. at 153-54). Plaintiff

still maintains a position with ASC in that department. (*Id.* at 149).

## II. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party, however, may not rest upon the mere allegations or denials in its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248. In deciding whether genuine issues of material fact exist, the court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003).

## III. Discussion

### A. Sexual Harassment

Plaintiff alleges he was subjected to sexual harassment by his co-worker, Dale Funk. ASC moves for summary judgment on Plaintiff's sexual harassment claim for two reasons: (1) Plaintiff failed to exhaust his administrative remedies, and (2) Plaintiff's evidence in support of his claim does not rise to the level of actionable harassment in the Seventh Circuit. The court will begin its discussion with the exhaustion issue.

### 1.     Failure to Exhaust

Generally, a plaintiff may not raise Title VII claims in a district court that were not included in the charge of discrimination filed with the EEOC unless the claim is like or reasonably related to one of the EEOC charges and can be expected to grow out of an investigation of the charges. *Jones v. Res-Care,* Inc., 613 F.3d 665, 670 (7th Cir. 2010); *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). A claim of sexual harassment is based on a different theory of discrimination, and is wholly distinct from, a claim of sex (or gender) discrimination. *Cheek*, 31 F.3d at 504 ("Ordinarily, a claim of sexual harassment cannot be reasonably inferred from allegations in an EEOC charge of sexual discrimination.") (citations omitted). Thus, a plaintiff who fails to assert allegations of sexual harassment in an EEOC charge may not bring such a claim in federal court. *Id*.

The present lawsuit is brought pursuant to Plaintiff's third charge of discrimination, which was filed in March 2010. In the box that reads "DISCRIMINATION BASED ON," Plaintiff checked "sex" and "retaliation." (Plaintiff's Dep. Ex. 3). Nowhere in his third charge of discrimination, (nor in his Complaint), does Plaintiff allege sexual harassment.

Moreover, Plaintiff's third charge of discrimination identifies September 2009 as the earliest possible date of discrimination. (*Id.*). Plaintiff testified, however, that the alleged sexual harassment by Funk occurred prior to August 2009. (Plaintiff Dep. at 60, 179-80). Plaintiff also testified that he was transferred out of the Assembly Department

location before September 2009, and that, since that time, he reported no further incidents of harassment by Funk. (*Id*. at 66, 133). Thus, a fair reading of Plaintiff's third charge would not alert an EEOC investigator to investigate a claim of sexual harassment.

In sum, Plaintiff's claim of sexual harassment is not like or reasonably related to a claim of sex discrimination and cannot be expected to grow out of an investigation of that charge. As Plaintiff failed to exhaust his administrative remedies with respect to that claim, Plaintiff's Title VII sexual harassment claim must be dismissed.

### 2.     Merits

For the sake of completeness, the court will address the merits of Plaintiff's sexual harassment claim.

To succeed on his Title VII sexual harassment claim against ACS, Plaintiff must prove: (1) that his work environment was both objectively and subjectively offensive; (2) that the harassment was based on his sex; (3) that the conduct was either severe or pervasive; and (4) that there was a basis for employer liability. *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir. 2011) (citations omitted). Stated differently, actionable sexual harassment is based on conduct so severe or pervasive that it alters the conditions of a plaintiff's employment, creating an abusive or "hellish" environment – one that a reasonable person would find abusive or hellish, and one that the plaintiff did in fact perceive to be so. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009) (citing *Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005)); *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806 (7th Cir. 2000) (citing *Meritor Sav. Bank, FSB v. Vinson*, 106 S.Ct.

2399, 2405 (1986)); *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997) ("The workplace that is actionable is 'hellish.'"). In *Baskerville v. Culligan Int'l Co.*, the Seventh Circuit provided the following guidance to district courts in evaluating these types of claims:

> On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers.

50 F.3d 428, 430-31 (7th Cir. 1995) (internal citations omitted).

Plaintiff's claim that Funk made over thirty sexual comments about the two of them having sexual relations with "little boys," that Funk told a co-worker that Plaintiff wanted to go out with him, that Funk put signs up at Plaintiff's work station insinuating that Plaintiff was "going to Boone's Pond," and that Funk rubbed up against Plaintiff's body, does not rise to a level of actionable sexual harassment under Seventh Circuit precedent. *See, e.g., McPherson v. City of Waukegan*, 379 F.3d 430 (7th Cir. 2004) (no hostile work environment where supervisor inquired about what color bra plaintiff was wearing, pulled back plaintiff's tank top to see her bra on one occasion, and used a suggestive tone of voice when asking plaintiff whether supervisor could "make a house call" when she called in sick); *Adusumilli v. City of Chicago*, 164 F.3d 353 (7th Cir. 1998) (no hostile work environment where supervisors and co-workers teased plaintiff about waving at squad cars, made ambiguous sexual comments about bananas, rubber bands, and low-neck tops, stared at her breasts, and, on four occasions, touched her arms,

fingers, or buttocks); *Skouby v. Prudential Ins. Co. of America*, 130 F.3d 794 (7th Cir. 1997) (no Title VII liability where harasser placed drawings on plaintiff's desk which said "I love you" or referenced marriage, put drawing on her desk which had a match representing an erect penis attached, and subjected plaintiff to sexual references, such as whether he was "eating her"); *Galloway v. General Motors*, 78 F.3d 1164 (7th Cir. 1996) (no objective hostile work environment where plaintiff was called a "sick bitch" on numerous occasions and an obscene gesture directed to her while demanding "suck this bitch"); *Saxton v. Am. Tel. & Tel. Co*, 10 F.3d 526 (7th Cir. 1993) (no hostile work environment where plaintiff alleged two incidents of misconduct by supervisor, each involving several inappropriate remarks and repeated touching); and *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333 (7th Cir. 1993) (no actionable harassment when plaintiff's supervisor jokingly called her a "dumb blonde," placed his hand on her shoulder several times, placed "I love you" signs in the work area, attempted to kiss her, and asked her out on dates). Although Funk's conduct was vulgar, crude, inappropriate, and disrespectful, it is not sufficient to cross the line into actionable sexual harassment.

Further, Plaintiff has not established a basis for employer liability. A Title VII employer may be held vicariously liable if the employer fails to take reasonable steps to prevent and correct promptly any harassing behavior. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Plaintiff testified that ASC did take corrective action by discussing Plaintiff's complaints with Funk. (Plaintiff Dep. at 61). In fact, Plaintiff testified that the harassment ended upon his August 2009 transfer:

> Q: . . . has [Funk] made any sexually inappropriate comments to you since August 2009?
>
> A: No, because once I – he found out that I'd been reporting him, [Cleary] or somebody talked to him and he got real quiet. He didn't say much at all.
>
> \* \* \*
>
> Q: At any time since August of 2009, has [Funk] rubbed up against you?
>
> A: No.
>
> Q: At any time since August 2009, has Dale Funk said or done anything to you that you consider to be in violation of the company's sexual harassment policy?
>
> A: Not that I can recall.

(*Id.*).

Moreover, Plaintiff testified that after he received an anonymous note stating that he needed to quit because he was a "rat piece of shit," ASC initiated an investigation and filed a police report with the Lebanon Police Department. (*Id*. at 94-95). This provides further evidence that ASC viewed an employee's allegations of workplace harassment seriously and corrected the problem in a reasonable and prompt fashion. For all of the reasons set forth above, ASC's Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's sexual harassment claim.

### B. Sex Discrimination

In Count I of Plaintiff's Complaint, Plaintiff alleges sex (gender) discrimination. Plaintiff did not raise an argument in opposition to ASC's motion for summary judgment

with respect to that claim.  A plaintiff's failure to respond does not relieve a defendant, as the moving party, of the burden of demonstrating that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994).  Plaintiff failed to submit any evidence to support an inference that ASC discriminated against him because of his male gender.  Accordingly, ASC's Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's sex discrimination claim.

### C. Retaliation

In Count II, Plaintiff alleges that he was retaliated against for filing EEOC charges through his involuntary transfer out of the Assembly Department, first through temporary assignments, and then through a permanent transfer to the Wash Department, where he also received a cut in pay.

A plaintiff may show retaliation under Title VII by either the direct or indirect method of proof.  *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012).  Here, Plaintiff proceeds under the direct method, which requires him to show that: (1) he engaged in statutorily protected activity; (2) he suffered a material adverse employment action; and (3) the protected activity is causally related to the adverse employment action.  *Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 703 (7th Cir. 2012) (citing *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 667 (7th Cir. 2011)).  The issue in dispute is the third – whether Plaintiff can establish a causal connection between the allegedly adverse actions of ASC and the filing of his EEOC charges of discrimination.

First, Plaintiff alleges that Thomas "required" Plaintiff to sign the December 9, 2009, formal request to eliminate his Assembler B position and bump into another job classification. According to Plaintiff, there was no basis for eliminating his Assembler B position. Plaintiff testified that he felt he had to sign the formal request or be laid off. (Plaintiff Dep. at 102). Upon further questioning, Plaintiff testified that ASC "said the position was going away," but that, in his opinion, there was plenty of work to keep him employed full time. (Plaintiff Dep. at 105). Plaintiff advances serious allegations against ASC, but none are supported by objective evidence. *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 905 (7th Cir. 2005) (observing that speculation is insufficient to establish causal link).

Second, Plaintiff complains that he was forced to receive temporary assignments out of the Assembly Department, with a majority of the time spent in the undesirable Wash Department. It is undisputed that when work was slow, ASC moved employees to different departments. (Plaintiff Dep. at 68-69). Plaintiff's situation was no different. Plaintiff remained classified as an Assembler until March 2010, and received the rate of pay of an Assembler, during this time frame. (*Id.* at 112). The fact that he may not have liked his assignment is beside the point. *See Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) (noting that "not everything that makes an employee unhappy is an actionable adverse action").

In March 2010, ASC permanently transferred Plaintiff to the Wash Department, resulting in a pay cut. It is undisputed that Plaintiff's pay rate was tied to the change in

his position as set forth by the CBA. (Plaintiff Dep. at 121-23). Thus, Plaintiff's pay cut was not causally connected to the filing of an EEOC charge.

Finally, Plaintiffs' assertion that he received a retaliatory cut in hours while employed in the Assembly Department is belied by the record. It is undisputed that Plaintiff's hours were cut when work was slow. (*Id*. at 141). Although Plaintiff argues he was singled out for engaging in protected activity, he has no evidence to support that assertion.

Because Plaintiff is unable to establish a causal link between his protected activity and any alleged adverse action, ASC's Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's retaliation claim.

## IV. Conclusion

Based on the reasons set forth above, ASC's Motion for Summary Judgment (Docket # 42) is **GRANTED**. A final judgment shall issue in a separate entry.


**SO ORDERED** this 29th day of September 2012.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana


Distributed Electronically to Registered Counsel of Record.